IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| REBECCA P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:22CV491 |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Rebecca P. ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g), 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.     PROCEDURAL HISTORY

Plaintiff protectively filed applications for DIB and SSI in March 2019, alleging a disability onset date of September 2018, later amended to July 2019. (Tr. at 15, 40, 246-61.)[1] Her applications were denied initially (Tr. at 73-107) and upon reconsideration (Tr. at 108-39). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative

---

[1] Transcript citations refer to the Sealed Administrative Record [Doc. #7].

Law Judge ("ALJ"). (Tr. at 179-80.) On September 1, 2020, Plaintiff, along with her attorney, attended the subsequent telephonic hearing, at which Plaintiff and an impartial vocational expert testified. (Tr. at 15.) Following the hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 28), and, on June 1, 2022, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review (Tr. at 1-6).

II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets and quotation omitted).

"Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (internal quotation omitted). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets and quotation omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 *et seq.*, provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 *et seq.*, provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, the claimant is disabled. Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

4

a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her amended alleged onset date of July 1, 2019. The ALJ therefore concluded that Plaintiff met her burden at step one of the sequential evaluation process. (Tr. at 17.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> degenerative disc disease of the lumbar spine with lumbar and lumbosacral radiculopathy; osteoarthritis; post-traumatic stress disorder; and depressive disorder[.]

(Tr. at 17.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 18-21.) Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform sedentary work with further, non-exertional limitations. Specifically, the ALJ found as follows:

> [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except [she] can frequently push/pull with the right upper extremity. She can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. She can occasionally stoop, crouch, and crawl. She can frequently kneel. She can never reach overhead with the bilateral upper extremities. She can understand, remember, and carry

5

> out simple instructions. She can occasionally interact with supervisors and co-workers, but never interact with the general public. She can tolerate infrequent and gradually introduced changes in the workplace.

(Tr. at 21.) At step four of the analysis, the ALJ determined, based on the testimony of the vocational expert, that Plaintiff's past relevant work exceeded the above RFC. (Tr. at 26-27.) However, the ALJ concluded at step five that, given Plaintiff's age, education, work experience, and RFC, along with the testimony of the vocational expert regarding those factors, Plaintiff could perform other jobs available in the national economy and therefore was not disabled under the Act. (Tr. at 27-28.)

Plaintiff now challenges the ALJ's mental RFC assessment.[4] Specifically, Plaintiff raises four overlapping claims all of which challenge the ALJ's assessment of evidence relating to Plaintiff's limitations in concentration, persistence, and pace. First, Plaintiff argues that the ALJ failed to account for Plaintiff's limitations in concentration, persistence, and pace in the RFC assessment in accordance with Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015). Second, Plaintiff alleges that the ALJ failed to adequately evaluate the opinion evidence from the state agency psychological consultants regarding Plaintiff's limitations in concentration, persistence, and pace. Third, Plaintiff contends that substantial evidence fails to support the RFC determination with respect to concentration, persistence, and pace. Finally, Plaintiff contends that the RFC failed to include mental limitations from the consultative examination, particularly with regard to concentration, persistence, and pace. Because these arguments are heavily overlapping, and in some instances repetitive, the Court addresses them together.

---

[4] Plaintiff does not raise any claim regarding the physical limitations, so this appeal addresses only Plaintiff's mental limitations.

In the present case, the ALJ determined at step three of the sequential analysis that Plaintiff has moderate limitations in concentration, persistence, and pace. In Mascio v. Colvin, the Fourth Circuit explained that, where moderate limitations in concentration, persistence, and pace are reflected at step three, the ALJ should address those limitations in assessing the RFC or should explain why the limitations do not affect the claimant's ability to work. The Fourth Circuit specifically held that "an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." Mascio, 780 F.3d at 638 (internal quotation omitted). This is because "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. The Fourth Circuit further noted that

> [p]erhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in [claimant]'s residual functional capacity. For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect [claimant]'s ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. But because the ALJ here gave no explanation, a remand is in order.

Id. (internal citation omitted). However, as previously noted in other cases in this District, the Fourth Circuit's decision in Mascio

> does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision. . . .
>
> An ALJ may account for a claimant's limitation with concentration, persistence, or pace by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

7

Tolbert v. Colvin, 1:15CV437, 2016 WL 6956629, at *8 (M.D.N.C. Nov. 28, 2016) (finding that RFC limitations to "simple, routine, repetitive tasks with simple, short instructions, in a job that required making only simple, work-related decisions, involved few workplace changes, and required only frequent contact with supervisors, co-workers, or the public" sufficiently accounted for a plaintiff's moderate limitations in concentration, persistence, or pace in light of the ALJ's explanation throughout the administrative decision) (quoting Jones v. Colvin, No. 7:14CV00273, 2015 WL 5056784, at *10-12 (W.D. Va. Aug. 20, 2015)); see also Sizemore v. Berryhill, 878 F.3d 72, 80–81 (4th Cir. 2017) (rejecting the plaintiff's argument under Mascio where the ALJ relied on the opinion of the state agency psychologist that, notwithstanding moderate limitations in concentration, persistence, and pace, the plaintiff could sustain attention sufficiently to perform simple, routine, repetitive tasks with additional limitations); Shinaberry v. Saul, 952 F.3d 113, 121-22 (4th Cir. 2020) (same, and noting that Mascio "did not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC").

Here, as in Mascio, the ALJ found moderate limitations in concentration, persistence, or pace at step three of the sequential analysis. (Tr. at 20.) Later in the sequential analysis, the ALJ formulated a mental RFC indicating that Plaintiff "can understand, remember, and carry out simple instructions" and "can tolerate infrequent and gradually introduced changes in the workplace." (Tr. at 21.) Plaintiff now argues that, in making this RFC finding, the ALJ did not fully account for Plaintiff's ability to stay on task due to her moderate difficulties with concentration, persistence, or pace.

8

As set out above, remand is not required under <u>Mascio</u> where the ALJ's discussion of, and reliance on, substantial record evidence adequately explains why the plaintiff's moderate limitation at step three did not translate into any additional RFC restrictions. In this case, the ALJ explained his analysis at length, based on Plaintiff's activities, her treatment notes, the consultative examination, and her mental status examination, and concluded that:

> Given the record, the undersigned finds that the claimant only has a moderate limitation in concentrating, persisting, or maintaining pace. The undersigned has accounted for this moderate limitation in the below-described residual functional capacity. She can understand, remember, and carry out simple instructions. She can tolerate infrequent and gradually introduced changes in the workplace.

(Tr. at 20.) Thus, the ALJ specifically explained his analysis and explained that Plaintiff's moderate limitations in concentration, persistence, and pace were accounted for in the RFC limiting her to work involving only simple instructions and involving only infrequent and gradually-introduced changes in the workplace.

In reaching this conclusion, the ALJ also relied on the opinion evidence from the state agency psychological consultants, Drs. Madelyn Miranda-DeCollibus and Linda Tyrrell, who found that Plaintiff "was capable of understanding and retaining at least simple instructions; can maintain concentration, persistence, and pace to stay on tasks for 2-hour periods during a typical 8-hour workday, as required to perform simple, routine, and repetitive tasks; can interact in a workplace setting with occasional social contact and/or interaction with supervisors, co-workers, and/or the public; and can adjust to routine workplace changes introduced in a gradual manner in a non-stressful work environment." (Tr. at 25-26, 84-86, 101-03, 118-19.) The ALJ found these opinions persuasive and set out his reasoning.

> The undersigned finds that the opinions of the State agency mental consultant, Dr. Madelyn Miranda-DeCollibus, Psy.D., are persuasive. In opinions at the initial level dated February 25, 2020, Dr. Miranda-DeCollibus opined that the claimant would have some mental limitations stemming from her mental impairments. Specifically, Dr. Miranda-DeCollibus found that the claimant was capable of understanding and retaining at least simple instructions; can maintain concentration, persistence, and pace to stay on tasks for 2-hour periods during a typical 8-hour workday, as required to perform simple, routine, and repetitive tasks; can interact in a workplace setting with occasional social contact and/or interaction with supervisors, co-workers, and/or the public; and can adjust to routine workplace changes introduced in a gradual manner in a non-stressful work environment. Her opinions are persuasive because they are consistent with and supported by the medical evidence of record. As discussed above, the record supports some limitations with regard to the claimant's mental impairments, but not to the degree that the claimant has alleged. Dr. Miranda-DeCollibus adequately accounted for some of the claimant's subjective complaints when viewed in light of the objective medical evidence.
>
> Similarly, the undersigned finds that the opinions of the State agency mental consultant, Dr. Linda Tyrrell, Psy.D., are persuasive. In opinions at the reconsideration level dated April 28, 2020, Dr. Tyrrell opined that the claimant would have some mental limitations stemming from her mental impairments. Dr. Tyrrell essentially adopted the opinions of Dr. Miranda-DeCollibus at the initial level. For similar reasons set forth above, the undersigned finds that the opinions of Dr. Tyrrell are persuasive because they are consistent with and supported by the medical evidence of record.

(Tr. at 25-26) (internal citations omitted).

Plaintiff challenges the consideration of this opinion evidence, arguing that the ALJ did not specify how each restriction was weighed or addressed, particularly the determination that Plaintiff could "stay on task for 2-hour periods." However, in Sizemore v. Berryhill, the Fourth Circuit considered a nearly identical state agency opinion and similar contention that the ALJ had failed to provide for the limitations opined by the state agency psychologist. Sizemore, 878 F.3d at 80. In Sizemore, similar to the present case, the state agency psychologist opined that the claimant had moderate difficulties with regard to concentration, persistence or pace, but "would generally be able to maintain attention for at least two hours

10

at a time as needed to do simple, routine tasks and was thus mentally capable of independently performing basic, routine tasks *on a sustained basis.*" Id. at 80-81 (internal brackets and quotations omitted). The ALJ in Sizemore relied on that opinion in setting the RFC, which limited the claimant to performing "simple one, two-step tasks" in a low stress work environment with no public contact. Id. The ALJ did not include an RFC limitation related to maintaining attention for two hours at a time, but the Fourth Circuit rejected Sizemore's Mascio challenge and rejected the contention that a remand was required for failure to accommodate all the limitations identified by the State agency physician. Id.

Similarly, in the present case, the state agency psychologists concluded that Plaintiff "can maintain concentration, persistence and pace to stay on tasks for 2 hour periods during a typical 8 hour workday, as required to perform simple, routine, repetitive tasks" (Tr. at 85, 118), and that she can "meet the basic mental demands of work on a sustained basis despite any limitations resulting from identified [impairments]" (Tr. at 86). When recounting the state agency consultants' findings, the ALJ specifically noted the finding that Plaintiff could "maintain concentration, persistence, and pace to stay on tasks for 2-hour periods during a typical 8-hour workday, as required to perform simple, routine, and repetitive tasks." (Tr. at 25-26). The ability to concentrate for two hours at a time falls within the general requirements for ordinary work, as defined by the SSA's own policies and procedures.[5] The ALJ specifically

---

[5] The agency's Program Operations Manual System ("POMS") provides that any job, including unskilled work, requires "[t]he ability to maintain concentration and attention for extended periods (the approximately 2-hour segments between arrival and first break, lunch, second break, and departure)," POMS DI 25020.010 B.2.a., and further lists the ability to "maintain attention for extended periods of 2-hour segments (concentration is not critical)" among "Mental Abilities Critical For Performing Unskilled Work," POMS DI 25020.010 B.3.d. See also, e.g., Tucker v. Saul, No. 1:18CV481, 2019 WL 3581795, at *5-6 (M.D.N.C. Aug. 6, 2019).

included limitations in the RFC addressing the limitations noted by the state agency consultants, limiting Plaintiff to only simple instructions and only infrequent and gradually introduced changes. As in Sizemore, the ALJ's decision appropriately relied on the opinion evidence from the state agency consultants, and did not fail to accommodate a limitation identified by the state agency consultants. See also Brown v. Kijakazi, 1:20CV1151, 2022 WL 943692, at *5-6 (Feb. 25, 2022) (rejecting similar challenge).

In a related argument, Plaintiff asserts that the ALJ failed to properly account for the findings of the consultative psychological examiner, Dr. Chad Ritterspach, when assessing Plaintiff's ability to maintain concentration, persistence, and pace. As the ALJ correctly recounted in his decision, Dr. Ritterspach concluded that Plaintiff's "ability to sustain attention to perform simple repetitive tasks appears mildly/moderately impaired." (Tr. at 26, 560.) The ALJ found Dr. Ritterspach's opinion "mostly persuasive," noting that "it is mostly consistent with and supported by the medical evidence of record." (Tr. at 26.) However, the ALJ further explained that Dr. Ritterspach's "use of 'mildly' and 'moderately' impaired is vague from a functional standpoint and difficult to quantify functionally." (Tr. at 26.) Plaintiff now argues that "[t]his statement does not explain why there were no further limitations in the MRFC to account for [Plaintiff's] moderate limitations in concentration, persistence and pace." (Pl.'s Br. [Doc. #11] at 11.) However, neither Plaintiff nor Dr. Ritterspach suggested any additional limitations. Moreover, the ALJ included an extended explanation of his analysis of Dr. Ritterspach's opinion, based on the substance of the consultative examination.

> The claimant underwent a psychological consultative examination on February 5, 2020 with Dr. Chad Ritterspach, Psy.D. She reported subjective complaints about her depression and PTSD. She stated that her neurologist prescribes her medication and that she has attended some counseling. She reported that she

12

> would have her first appointment with a new provider soon, but that she has never been in a psychiatric hospital. The record does not show that the claimant had an appointment for any mental health treatment with her purported new provider. On mental status examination, the claimant performed fairly well with objective findings that were not entirely consistent with her subjective complaints or alleged degree of limitation. She was willing to answer questions, provided all information, and appeared to be a reliable informant. She repeated five digits forward, was able to recall 3/3 words immediately, and 1/3 after a short delay. With a category, she was able to name the other 2 words in the short delay exercise. Her speech was articulate and of normal volume and her pace of speech was within normal limits. Her recent and remote memory appeared to be intact. She was able to spell "world" backwards. She was able to name large U.S. cities. She was able to perform mental calculations. Her attitude and demeanor were pleasant and she engaged with the examiner. She showed no exaggerating or evasiveness. Her activity level was appropriate for a clinical interview. She was neatly dressed. Her hygiene/grooming was appropriate. Her thought processes were logical/grounded and her thought content was appropriate for mood and circumstances. She was oriented to time, person, place, and situation. She showed adequate judgment and insight.
>
> . . . .
>
> The undersigned finds that the opinion of the consultative examiner, Dr. Ritterspach, is mostly persuasive. In an opinion dated February 5, 2020, Dr. Ritterspach found that the claimant had the following limitations: her ability to understand, retain, and following instructions is mildly impaired; her ability to sustain attention to perform simple repetitive tasks is mildly/moderately impaired; ability to relate to others, including co-workers and supervisors, is moderately impaired; and her ability to tolerate stress/pressures associated with daily work activity is moderate impaired. His opinion is mostly persuasive because it is mostly consistent with and supported by the medical evidence of record. His use of "mildly" or "moderately" impaired is vague from a functional standpoint and difficulty to quantify functionally. The above-described residual functional capacity better reflects the ability [of] the claimant to perform work-related activities from a mental standpoint. Nonetheless, his opinion is not necessarily inconsistent with the above-described residual functional capacity.

(Tr. at 25, 26) (internal citations omitted). The ALJ thus clearly analyzed and weighed the evidence from the consultative examination and the opinion evidence from Dr. Ritterspach, but concluded that the absence of any specific functional limitations in the opinion made it difficult to quantify or incorporate, and that the RFC incorporating more specific functional

13

limitations better reflected Plaintiff's work-related abilities. The ALJ also noted that given the vague nature of Dr. Ritterspach's opinion, in his view the RFC was not inconsistent with the opinion. These are reasonable conclusions that allow the Court to follow the ALJ's analysis. In short, Plaintiff fails to show that the ALJ's treatment of Dr. Ritterspach's opinion resulted in any error, let alone error requiring remand.

Finally, to the extent that Plaintiff generally contends that the ALJ's decision was not supported by substantial evidence, it is clear that the ALJ had sufficient evidence supporting the determination, including the opinions from the state agency consultants, and the ALJ fully explained his analysis. (Tr. at 25-26.) In addition, the ALJ explained his conclusion that the medical evidence of record was not consistent with Plaintiff's subjective complaints regarding her symptoms and the degree of limitation, in light of her normal mental status exams and her lack of formal mental heath treatment from a mental health professional. (Tr. at 24-25.) While Plaintiff disagrees with the ALJ's evaluation, Plaintiff is essentially asking the Court to reconsider the decision and re-weigh the evidence and come to a different conclusion than the ALJ. However, it is not the function of this Court to re-weigh the evidence or reconsider the ALJ's determinations if they are supported by substantial evidence. As noted above, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets and quotation omitted). Thus, the issue before the Court is not whether a different fact-finder could have drawn a different conclusion, or even "whether [Plaintiff] is disabled," but rather, "whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig, 76 F.3d at 589.

Here, the ALJ reviewed the evidence, explained his decision, and supported that explanation with substantial evidence. Plaintiff has not identified any errors that require remand, and Plaintiff's Motion to Reverse the Decision of the Commissioner should therefore be denied.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Judgment on the Pleadings [Doc. #10] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #14] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 25th day of August, 2023.

/s/ Joi Elizabeth Peake<br>United States Magistrate Judge